## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                    **Case No.: 8:21-cr-216-KKM-JSS**

**MICHAEL LUMPKIN**

_____ /

### <u>DEFENDANT'S SENTENCING MEMORANDUM IN SUPPORT OF A DOWNWARD VARIANCE</u>

Defendant, Michael Lumpkin, by and through undersigned counsel, pursuant to 18 U.S.C. § 3553(a), files this sentencing memorandum in support of a downward variance. Specifically, a sentence of 38.5 years or 462.95 months of imprisonment, followed by lifetime supervised release, is sufficient but not greater than necessary to accomplish the statutory purposes of sentencing.

### Mr. Lumpkin's background and personal history

Mr. Lumpkin was born in Rochester, New York. He was raised by his biological mother and is the second oldest of five siblings. He was raised by a single mother as she worked in a hospital as a certified nursing assistant and a janitor in a school. He shares a father with his older sibling, and the

1

remaining three have different fathers. His biological father was not involved in his life as he left their family when Mr. Lumpkin was two years old. He suspects the father was abusive towards his mother.

At age 12, he recalled that his mother allowed him to reconnect with his father, and he would spend summers with his father in North Carolina. Yet there was little attention and an absence of mentoring from his father which increased Mr. Lumpkin's feelings of alienation and loneliness.[1]

In considering adverse childhood experiences, Mr. Lumpkin described having a difficult childhood as his mother struggled to raise her children alone.[2] They grew up in a poor neighborhood, were evicted several times, and lacked food in the home. As they struggled with homelessness, they stayed in a homeless shelter, and his mother was forced to separate her

---

[1] There exists a considerable research base that suggests that children raised in households lacking a father experience psychosocial problems with greater frequency than children with a father in the home. These problems have been found to extend into adolescence and adulthood and include an increased risk of substance use, depression, suicide, poor school performance, and contact with the criminal justice system (Allen & Daly, 2007), *The effects of father involvement: An updated research summary of the evidence*. Guelph: Father Involvement Research Alliance.

[2] Mr. Lumpkin's statements are from conversations with undersigned counsel, Federal Defender staff and its agents.

2

children and find them shelter with relatives. They often wore dirty clothing, did not have access to a laundry, and were forced to wash their clothes in a sink.

His mother lived an isolated life from the rest of her family. He explained that his mother was rejected by her own family for unknown reasons. As his mother worked, they spent significant time on their own, with no supervision.

He witnessed domestic violence between his mother and paramours. Mr. Lumpkin described being punched in the stomach by his mother's boyfriend, witnessing his mother holding a knife to her boyfriend's neck, and threatening to hit a man with a bat after discovering he was unfaithful to her. Child protective services frequented the home as others reported concerns that the children were exposed to violence, drugs, and neglect. When his mother perceived that Mr. Lumpkin had been "bad," she used excessive forms of corporal punishment to discipline him.

Mr. Lumpkin has never been treated for the trauma he has experienced. That trauma influences all his life choices. For instance, Mr. Lumpkin completed the tenth grade but, has been unsuccessful in earning

3

his GED. He had conduct issues during his school years, likely the result of frequent moves and unstable home life. Without any stability or education, he has had a series of low-level jobs.

The stressful family dynamics were significant traumatic events for Mr. Lumpkin. He has felt isolation and abandonment by both parents. Proper relationships and boundaries are difficult for him to understand. He has not had any role models or anyone teaching him proper social and sexual interactions. Moreover, his life experiences to date have resulted in a numbing of his feelings.

Like many alienated young adults, Mr. Lumpkin found solace and escape in the digital world and pornography. This fascination with pornography led him to fall into viewing child pornography which became all consuming. His aberrant behavior became aggressive and abusive when he started engaging in digital chats with minors.

The United States Sentencing Commission has found that

the expansion of digital and mobile technology has contributed to a 422 percent increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in fiscal year 2005 to 512 offenders in fiscal year 2019." www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-production-offenses

(*Last accessed* on December 27, 2022).

"Furthermore, over three-quarters (78.0%) were convicted under a statute carrying at least a 15-year mandatory minimum penalty." *Id.* "Most child pornography production offenders, however, received a variance below the applicable guideline range (57.2% of the 512 cases)." *Id.*

## SENTENCING GUIDELINES

Mr. Lumpkin respectfully objects to aspects of the Federal Sentencing Guidelines as calculated by United States Probation and detailed in his Presentence Investigation Report ("PSR"). Specifically, he objects to the four-level enhancement if there is "material that portrays sadistic or masochistic conduct or other depictions of violence." Mr. Lumpkin incorporates the arguments in his PSR objection into this memorandum. He would hold the government to its burden to prove this enhancement.

## ARGUMENT IN SUPPORT OF A DOWNWARD VARIANCE

The guideline sentence is 60 years or 720 months of imprisonment which is the statutory maximum for the crimes to which he has pleaded guilty. Mr. Lumpkin doesn't dispute that he has committed serious crimes.

Given his conduct and guilty pleas, Mr. Lumpkin cannot and will not escape a harsh sentence for his criminal conduct. The question before this Court is not whether Mr. Lumpkin will receive a significant prison sentence, but whether a sentence that functions to imprison Mr. Lumpkin for the rest of his life is "sufficient, but not greater than necessary to comply with" the statutory purposes of sentencing. 18 U.S.C. § 3553(a). Without minimizing or excusing his crimes, there is evidence which weighs in favor of imposing a sentence which does *not* require Mr. Lumpkin to live the rest of his life in confinement.

## I.   Mr. Lumpkin takes complete responsibility for his crimes, and has acted to the greatest extent that he can to minimize any further trauma to his victims and their families.

The United States Sentencing Commission recognizes a legitimate societal interest in giving credit to any defendant who demonstrates acceptance of responsibility for their offense by pleading guilty and truthfully admitting to their conduct. U.S.S.G. §3E1.1 cut. n.1, and background.  A defendant who pleads guilty and admits to his conduct waives significant constitutional protections in favor of conserving the

resources of the courts and of the executive branch.  Additionally, such pleas spare victims and their loved ones from having to live through and potentially participate in a trial which could force them to relive traumatic events.  For these reasons, among others, the Federal Sentencing Guidelines take the position that a defendant who affirmatively takes responsibility for their crimes "is appropriately given a lower offense level that a defendant who has not demonstrated acceptance of responsibility."  U.S.S.G. §3E1.1, cmt. n.1, and background.

In this case, Mr. Lumpkin entered guilty pleas and admitted to his conduct. Mr. Lumpkin has accepted full responsibility for his horrific conduct by pleading guilty. Yet, he has done more than merely pleading guilty. By pleading guilty there will not be a trial. A trial would have required underage minors to discuss unlawful and traumatic sexual acts. A trial would have likely created additional trauma for these minors. Mr. Lumpkin believed that one way he could atone for his actions was to plead guilty and save these victims from the trauma of a trial. He has done that and feels remorse for his actions.

Again, Mr. Lumpkin has entered guilty pleas with an appeal waiver to

spare the victims and their families, to the extent that he can, from having to relive these offenses. Imposition of the maximum potential sentence would effectively discount Mr. Lumpkin's effort to take responsibility for his actions.  Sentencing Mr. Lumpkin to the highest sentence available under the law carries the potential danger of acting to discourage other similarly situated defendants from conserving resources and sparing other victims. For these reasons, a sentence of 60 years of imprisonment is contrary to societal interests and is longer than necessary to accomplish the statutory purposes of sentencing.

II.   **Sentencing Mr. Lumpkin to 38.5 years or 462.95 months of imprisonment prevents a disparity between similarly situated defendants.**

As noted, the Sentencing Commission's statistics show that 57.2% of individuals convicted of child production receive a downward variance. As to sentencing disparity, the Sentencing Commission provides guidance. An analysis of similarly situated defendants shows that between 2017 and 2021 there were 14 similarly situated defendants nationally. To locate the data on similarly situated defendants to Mr. Lumpkin, the following characteristics were used:

8

a person who:

– is convicted of two counts of 18 U.S.C. § 2251(a);
– has a statutory minimum of 180 months;
– has a statutory maximum of 720 months;
– has Guidelines calculated under USSG § 2G2.1;
– has a combined adjusted offense level of 46 (before Chapter Four enhancements);
– is given the five-level enhancement under USSG § 4B1.5(b);
– has a Total Offense Level of 48 (defaulting to 43); and
– has a Criminal History Category of I.

With this profile, the average sentence imposed was **462.95 months.**[3]

---

[3] The data used for these analyses were extracted from the U.S. Sentencing Commission's "Individual Offender Datafiles" spanning fiscal years 2017 to 2021. The Commission's "Individual Offender Datafiles" are publicly available for download on its website. U.S. Sent'g Comm'n, Commission Datafiles, https://www.ussc.gov/research/datafiles/commission-datafiles. (*Last accessed* December 27, 2022)

The raw data extracted from the database shows:

| AGE | DISTRICT | CIRCUIT | SENTENCE | SENTMON | SENTYR | SUPREL | USSCIDN |
|---|---|---|---|---|---|---|---|
| 30 | Idaho | 9 | 292 | 9 | 2021 | 300 | 2694194 |
| 53 | Washington East | 9 | 336 | 4 | 2021 | LIFE | 2665885 |
| 39 | Minnesota | 8 | 528.33 | 2 | 2021 | LIFE | 2662801 |
| 53 | Missouri East | 8 | 276 | 12 | 2020 | LIFE | 2649710 |
| 32 | Arkansas West | 8 | 405 | 11 | 2020 | LIFE | 2643292 |
| 35 | California Central | 9 | 360 | 11 | 2019 | LIFE | 2605644 |
| 33 | N Carolina Mid | 4 | 528 | 8 | 2019 | 300 | 2570848 |
| 49 | New Hampshire | 1 | 600 | 12 | 2018 | LIFE | 2508839 |
| 54 | Wyoming | 10 | 180 | 6 | 2018 | LIFE | 2470068 |
| 31 | Texas West | 5 | 540 | 2 | 2018 | 120 | 2452843 |
| 23 | Florida Mid | 11 | 720 | 3 | 2018 | LIFE | 2451300 |
| 48 | Michigan West | 6 | 720 | 2 | 2018 | 60 | 2450001 |
| 56 | Missouri East | 8 | 276 | 2 | 2018 | LIFE | 2446043 |
| 29 | Texas North | 5 | 720 | 12 | 2017 | LIFE | 2435881 |

*Id.*

This data remarkably shows that the last time 720 months was imposed for these similarly situated defendants was 2018. So, the sentences for these defendants continue to drop.

Notably, there is a Middle District of Florida case in 2018 in which the maximum sentence of 720 months was imposed. But it is easily

distinguishable from Mr. Lumpkin's case. The case is *United States v. Andrew Ryan Leslie,* cause number 3:16-cr-154-BJD-JBT.

Mr. Leslie was first charged by way of a Criminal Complaint. Cause Number 3:16-mj-1265-MCR; (Exhibit 1) The Complaint alleges that Mr. Leslie produced child pornography, specifically:

> In several images, your affiant observed the same prepubescent minor female child (approximately 2 years of age), who was observed in the bed of LESLIE, as well as another infant female child. These images depicted, among other things, this older female minor engaged in sexually explicit conduct, including being penetrated by an adult male's penis and engaging in fellatio with an adult male's penis. There were also images depicting the lascivious exhibition of the infant female child's genitalia. Exhibit 1 Complaint at pg. 5.

Mr. Leslie was later charged by Indictment with two counts of child production in violation of 18 U.S.C. §§ 2251(a) and (e)-the same violations as Mr. Lumpkin.

Mr. Leslie executed a plea agreement pleading guilty to two counts of child production. (Exh 2-Leslie Plea Agreement) Mr. Leslie agreed to the factual basis which recounted the same horrific conduct with a two-year old and an infant. For that conduct, he received the statutory maximum of 720 months. Mr. Lumpkin's conduct did not involve any hands-on sexual

conduct with the victims in this case, and certainly no unlawful conduct with an infant and a toddler.

Having distinguished the *Leslie* case, Mr. Lumpkin requests that the Court sentence him to the average sentence imposed for similarly situated defendants, that is, 38.5 years or 462.95 months of imprisonment.

### III. Mr. Lumpkin is highly unlikely to reoffend if released from prison after 462.95 months/38.5 years in custody.

A primary concern, from the Government's point of view, is likely that the public be protected from any future actions Mr. Lumpkin would take—similar to the acts engaged in in the current case. This Court can satisfy that concern with a sentence of 38.5 years (462.95 months) incarceration and a lifetime term of supervised release with special conditions.

Mr. Lumpkin was born on June 3, 1995, and will, as of the date of sentencing, be 27 years old. With a sentence of 38.5 years (462.95 months), he will be 65.5 years old when he is released.

Likelihood of recidivism does have a link to age upon release from BOP. The United States Sentencing Commission has been studying recidivism among federal offenders since shortly after the enactment of the

Sentencing Reform Act (SRA) of 1984.[4] Recidivism is defined as a "person's relapse into criminal behavior, often after the person receives sanctions or undergoes intervention for a previous crime." *Id.*, p. 6.

Data from the United States Sentencing Commission tells us that older offenders are "substantially less likely than younger offenders to recidivate following release," with offenders 65 years of age and over being the least likely of all offenders to be rearrested after release.[5]  Separately, the United States Sentencing Commission has identified a statistically significant relationship between the length of a sentence and deterrence. More specifically, offenders incarcerated for more than 120 months are estimated to be approximately 30% to 45% less likely to recidivate than those serving shorter periods of incarceration. *Id.*

Specifically, the study shows that, with a sentence of 38.5 years, Mr.

---

[4]Ryan Cotter, Ph.D., *Length of Incarceration and Recidivism,* United States Sentencing Commission, (June 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220621_Recidivsm-SentLength.pdf (*Last visited* December 29, 2022).

[5]Kim Steven Hunt and Bill Easley II, *The Effects of Aging on Recidivism Among Federal Offenders*, United States Sentencing Commission, (Dec. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (*Last visited* December 29, 2022).

Lumpkin's risk of recidivism is 4.1%.[6]



Figure 1.
Demographic Characteristics of Recidivism Study Offenders

In this case, a period of 38.5 years of imprisonment followed by supervised release is sufficient to afford adequate deterrence and protect the community. At release, Mr. Lumpkin would be of an age where he would be in the category of offenders who are least likely to reoffend. Additionally, a sentence of 38.5 years (462.95 months) is more than three and a half times longer than the 120-month period threshold for demonstrable deterrence. For these reasons, a sentence of 38.5 years (462.95) of imprisonment followed by supervised release satisfies the statutory objectives of both protection of

---

[6] *See* "United States Sentencing Commission, Recidivism Among Federal Offenders: A Comprehensive Overview." March 2016. *Found at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf., pg. 14 (*Last accessed* December 29, 2022).

the community and deterrence.

## CONCLUSION

The Defendant, Michael Lumpkin, respectfully suggests that a sentence of 38.5 years (462.95 months) of imprisonment, in conjunction with an extended period of supervised release, reflects the seriousness of his offensive conduct, affords adequate deterrence, protects the public, and provides Mr. Lumpkin with the rehabilitation that he needs to be a productive and law-abiding citizen in the future.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s/ Kathleen M. Sweeney*
Kathleen M. Sweeney, Esq.
Assistant Federal Defender
IN Bar No. 2192-49
400 North Tampa Street
Suite 2700
Tampa, FL. 33602
Tel.:  (813) 228-2715
Fax:  (813) 228-2562
Email: Kathleen_Sweeney@fd.org

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 30, 2022, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to Ilyssa Spergel, AUSA.

*/s/ Kathleen M. Sweeney*
Kathleen M. Sweeney, Esq.

# DEFENSE

# EXHIBIT 1

AO (Rev. 5/85) Criminal Complaint

**UNITED STATES DISTRICT COURT**

MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT

*10.18.16*

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

**CRIMINAL COMPLAINT**

vs.

Case Number: 3:16-mj- *1265-MCR*

ANDREW RYAN LESLIE

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.  On or about October 14, 2016, in the Middle District of Florida, ANDREW RYAN LESLIE did employ, use, persuade, induce, entice, and coerce at least two minor children to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, in violation of Title 18, United States Code, Section 2251(a).

I further state that I am a Special Agent with Homeland Security Investigations, an agency of the United States Department of Homeland Security, and that this Complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof:     ☒ Yes    ☐ No

Signature of Complainant
JAMES C. GREENMUN, Special Agent
Homeland Security Investigations

Sworn to before me and subscribed in my presence,

October _18_, 2016                    at          Jacksonville, Florida

MONTE C. RICHARDSON
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, James C. Greenmun, being duly sworn, hereby state as follows:

## INTRODUCTION

1.      I am a Special Agent ("SA") with the Homeland Security Investigations (HSI), an agency of the United States Department of Homeland Security ("DHS"). I have been so employed since March 2003, when HSI and Immigration and Customs Enforcement ("ICE") was created during the organization of DHS. I am presently assigned to the Assistant Special Agent in Charge ("ASAC") Field Office of HSI in Jacksonville, Florida. Prior to being a Special Agent with HSI/ICE, I was a Special Agent with the United States Customs Service ("USCS") for approximately 1 year and 2 months.

2.      My experience as an HSI agent and a USCS agent has included the investigation of cases involving the use of computers and the Internet to commit violations of federal law involving child exploitation, including the production, transportation, receipt, distribution and possession of child pornography. I have received training from the USCS and have gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications and the execution of searches and seizures involving computer crimes. I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children which constituted violations of Title 18, United States Code, Sections 2251, 2252 and 2252A, as well as Florida state statutes which criminalize the possession, receipt and transmission

of child pornography, that is, visual images depicting minors engaged in sexually explicit conduct.

      3.    I am also a Computer Forensic Agent ("CFA") with HSI and have been working in that capacity since June 2005. I have received extensive training and education in the field of computer evidence recovery. I hold a Master's Degree in Digital Forensics from the University of Central Florida (UCF). Other training includes the Treasury Computer Forensic Training Program ("TCFTP") and the International Association of Computer Investigative Specialists ("IACIS"), among others. I have conducted numerous computer forensic examinations for ICE as well as for various other federal, state and local law enforcement agencies.

      4.    Prior to joining the USCS, I obtained a Bachelor of Arts degree in Criminology from the University of South Florida in Tampa, Florida.

      5.    I am responsible for investigating violations of U.S. Customs laws and other federal laws, including the offenses of advertising, production, transportation, receipt, distribution, and possession of child pornography (as defined in Title 18, United States Code Section 2256) in interstate or foreign commerce by any means, including by computer.

      6.    The statements contained in this affidavit are based on my personal knowledge as well as on information provided to me by other law enforcement officers. This affidavit is being submitted for the limited purpose of establishing probable cause for the filing of a criminal complaint, and I have not included each and every fact known to me concerning this investigation. I have set forth only

the facts that I believe are necessary to establish probable cause to believe that ANDREW RYAN LESLIE has committed a violation of Title 18, United States Code, Sections 2251(a), that is, production of child pornography.

7.     The statements contained within this affidavit are based on my training and experience and my personal observation, as well as the training and experience of and information communicated to me by other law enforcement personnel with whom I have personally spoken.

8.     This affidavit is made in support of a complaint against ANDREW RYAN LESLIE, that is, on or about October 14, 2016, in the Middle District of Florida, ANDREW RYAN LESLIE did employ, use, persuade, induce, entice, and coerce at least two minor children to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, in violation of Title 18, United States Code, Section 2251(a).

9.     On October 17, 2016, I applied for and obtained a federal search warrant for the residence of ANDREW RYAN LESLIE, which this investigation revealed to be located at 3244 Deer Creek Drive, Middleburg, Florida 32068. This search warrant was issued by United States Magistrate Judge Monte C. Richardson for fruits, instrumentalities, and evidence of violations of Title 18, United States Code, Sections 2251, 2252, and 2252A.  This search warrant was based upon a child exploitation investigation that I have personally participated in along with other HSI agents and other law enforcement officers.  During this

3

investigation, ANDREW RYAN LESLIE was identified as a subject of this investigation.

10.     On October 18, 2016, I, together with other HSI agents and personnel and law enforcement officers, executed this federal search warrant at the residence located at 3244 Deer Creek Drive, Middleburg, Florida 32068. LESLIE was present at the residence.

11.     Your affiant was informed by SA Ryan McEnany that upon entry into the residence, LESLIE emerged from the master bedroom and indicated in substance that a minor female child, referred to by LESLIE as a "toddler," had been in the bed with LESLIE in the master bedroom.

12.     During the execution of the search warrant, your affiant observed LESLIE and noticed that LESLIE had a distinctive dark colored nail polish on his fingernails.

13.     During the execution of the search warrant, SA Pete Manning and Computer Forensic Agent (CFA) Sam Padilla conducted a computer forensic preview of some of the computer media discovered within the residence. SA Manning and CFA Padilla advised me that Clay County Sheriff's Office Detective Ryan Ellis located, on a nightstand located next to LESLIE's bed in the master bedroom, a Canon PC1737 Powershot A3400 IS digital camera bearing serial number 432061019849 and the marking "Made in China." Contained within the camera was an SD adapter and a micro SD card. This micro SD card was a Toshiba 8GB HC Micro SD bearing serial number 1403RP4801P with the markings, "Taiwan." Based on my training and experience, I have probable

4

cause to believe that this camera and this SD card were shipped and transported in or affecting interstate and foreign commerce. During the computer forensics preview of these media items, SA Manning and CFA Padilla discovered a series of pornographic images depicting at least two minor female children contained therein. Your affiant has reviewed these images. In several images, your affiant observed the same prepubescent minor female child (approximately 2 years of age), who was observed in the bed of LESLIE, as well as another infant female child. These images depicted, among other things, this older female minor engaged in sexually explicit conduct, including being penetrated by an adult male's penis and engaging in fellatio with an adult male's penis. There were also images depicting the lascivious exhibition of the infant female child's genitalia. In several images, an adult hand is pictured gripping the adult penis as it touches the genitalia of one of the minor female children, and also touching the pubic area of one of the minor children. The thumb of the adult's left hand is shown to have nail polish on the thumbnail ~~of the same color that your affiant observed on LESLIE's nails that day~~. Based on my training and experience, and my observations of LESLIE's polished nails, I have probable cause to believe that the adult participating in sexually explicit conduct with these two minor children is LESLIE. I also observed, based on the image file properties data, that of all the images on the Toshiba SD card (42 in total), 41 of these, including those discussed above that depicted the minors engaged in sexually explicit conduct, were produced and/or created on October 14, 2016.

5

14. Based upon the foregoing facts, I have probable cause to believe that on or about October 14, 2016, in the Middle District of Florida, ANDREW RYAN LESLIE did employ, use, persuade, induce, entice, and coerce at least two minor children to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, which visual depictions were produced using materials that have been mailed, shipped or transported in or affecting interstate or foreign commerce by any means, in violation of Title 18, United States Code, Section 2251(a).

JAMES C. GREENMUN, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this
_____ day of October, 2016, at Jacksonville, Florida.

MONTE C. RICHARDSON
United States Magistrate Judge

6

# DEFENSE EXHIBIT 2

FILED IN OPEN COURT

10-6-2017

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO. 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by W. Stephen Muldrow, Acting United States Attorney for the Middle District of Florida, and the defendant, ANDREW RYAN LESLIE, and the attorney for the defendant, Mark J. Rosenblum, Esq., mutually agree as follows:

### A.      Particularized Terms

#### 1.      Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Two of the Indictment. Counts One and Two each charge the defendant with production of child pornography, in violation of 18 U.S.C. §§ 2251(a) & 2251(e).

#### 2.      Minimum and Maximum Penalties

Counts One and Two of the Indictment are each punishable by a mandatory minimum term of imprisonment of not less than 15 years and not

Defendant's Initials _AL_                       AF Approval _BD_

more than 30 years, a fine of $250,000, or both, a term of supervised release of any term of years not less than 5, or life, and a special assessment of $100, said special assessment to be due on the date of sentencing. In addition, pursuant to Title 18, United States Code, Section 3014(a)(3), the Court shall assess an amount of $5,000 on any non-indigent defendant. If the Court sentenced the defendant on each count consecutively, the aggregate minimum and maximum penalties would be a minimum mandatory term of imprisonment of not less than 30 years and not more than 60 years, fines totaling $500,000, or both, a term of supervised release of any term of years not less than 5 years, or life, and special assessments totaling $200 and $10,000. Pursuant to Title 18, United States Code, Section 3583(k), if the defendant is required to register under the Sex Offender Registration and Notification Act and commits any criminal felony offense under Title 18, United States Code, Chapters 109A, 110 or 117, or Sections 1201 or 1591, the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment of not less than 5 years and up to life per count. Any other violation of the terms and conditions of supervised release is punishable by a term of imprisonment of up to 3 years per count. With respect to these offenses and pursuant to Title 18, United States Code, Sections 2259, 3663A and 3664, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to

Defendant's Initials _̳K̳L̳_̳     2

other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community.

### 3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Counts One and Two of the Indictment are:

> First:    That an actual minor, that is, a real person who was less than 18 years old, was depicted;
>
> Second:    That the defendant employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of the conduct; and
>
> Third:    That such visual depictions were produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce.

### 4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials _____    3

5. **Restitution to Any Minor Victims of Offenses Committed by Defendant, Whether Charged or Uncharged**

Pursuant to 18 U.S.C. §§ 3663A(a) & (b), 18 U.S.C. § 3664, 18 U.S.C. § 2248, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

6. **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG

Defendant's Initials _____ 4

§3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7. **Cooperation - Substantial Assistance to be Considered**

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the

Defendant's Initials _____      5

charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that

Defendant's Initials _____     6

defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.   **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States, the defendant or defendant's nominees.   The defendant specifically agrees and consents to the administrative forfeiture of the following:

a.   Gateway Laptop, SN N186A61005160;

b.   Thermaltake CPU, SN CA1A800M1NN00E1000657;

c.   Glite CPU, SN RC330UKKR3501121500070;

d.   Thermaltake, SN VJ400GIN201004005536;

e.   ASUS Laptop; SN D5N0CY56039221A;

f.   ACER Aspire One, SN LUS050B11184359EE22535, W/CORD;

g.   Cyber Power Supply, SN CPMDU2002334;

h.   Inatec External HD, SN WX11A5369636;

i.   9" Mid Android Tablet, SN JHS2CJHA1110AH;

j.   Seagate Barracuda Internal HDD, SN Z1F12JJM;

k.   Seagate Barracuda Internal HDD, SN 9VS2250M;

Defendant's Initials ____        7

l.      Seagate Barracuda Internal HDD; SN SQM1LB1N;

m.     Seagate Barracuda Internal HDD, SN 5XWIN7R6;

n.     (no name) Internal HDD, SN E79085KHH;

o.     Seagate Momentus Internal HDD, SN 5SH0HD40;

p.     Seagate Momentus Internal HDD, SN 55VIHXXB;

q.     Western Digital Black Internal HDD,
SN WXZIE64CPA87;

r.     Samsung Internal HDD; SN 525WJ9FZ006527;

s.     Seagate Ultrathin Internal HDD, SN W3N0AYO5;

t.     Seagate Freeplay Internal HDD, SN Z1022K49;

u.     Canon Powershot Camera, SN 4628106690;

v.     Canon A3400 Powershot Camera, SN 432061614849;

w.     HTC Cell Phone, SN FA44J5900518;

x.     Samsung Phone, SN SCH1545FKVPS;

y.     Samsung Phone, SN A3LSMG935us;

z.     HTC Cell Phone, IMEI 990000326143433;

aa.    (5) ACER Monitors;

bb.    Monitor Stand w/ misc. cords;

cc.    WII w/ controllers, SN KU10259575907;

dd.    XBOX w/ cord, SN 12577674307;

ee.    IPOD 32GB, No SN;

Defendant's Initials _____        8

ff. (5) Thumb Drives;

gg.   (5) SD Cards;

hh.   (2) SIM Cards;

ii.   (2) Spindles w/ CD'S;

jj.   CD Wallet w/ Disks;

kk.   Amazon Kindle Fire Tablet; and

ll.   HTC Cell Phone, SN T54GSV01963,

seized from the defendant by the Department of Homeland Security, U.S. Immigration and Customs Enforcement, on October 18, 2016.

If the administrative forfeiture proceeding is not completed prior to sentencing, the defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal or civil judicial forfeiture action.

The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

Defendant's Initials _a_        9

9.     **Sex Offender Registration and Notification**

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school.  Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

B.     **Standard Terms and Conditions**

1.     **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses

Defendant's Initials _____     10

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (18 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013 and if applicable, 18 U.S.C. § 3014(a)(3). The special assessments are due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   **Supervised Release**

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the

Defendant's Initials _____          11

conditions of release, the defendant would be subject to a further term of imprisonment.

3.    **Immigration Consequences of Pleading Guilty**

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    **Financial Disclosures**

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.   **Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   **Defendant's Waiver of Right to Appeal the Sentence**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the

Defendant's Initials _____          14

right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____        15

9.    **Filing of Agreement**

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in

defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea

Defendant's Initials _____                    17

and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.  **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _25_ day of _September_, 2017.

W. STEPHEN MULDROW
Acting United States Attorney


ANDREW RYAN LESLIE
Defendant


MARK J. ROSENBLUM
Attorney for Defendant


D. RODNEY BROWN
Assistant United States Attorney


LAUREN E. BRITSCH
Trial Attorney
United States Department of Justice
Criminal Division
Child Exploitation & Obscenity Section


KELLY S. KARASE
Assistant United States Attorney
Deputy Chief, Jacksonville Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

### PERSONALIZATION OF ELEMENTS

**As to Count One**

1.      Do you admit that an actual minor, that is, a real person who was less than 18 years old, was depicted?

2.      In or about October 14, 2016, in the Middle District of Florida, did you employ and use a Child 1, to engage in sexually explicit conduct, that is, genital to genital and oral to genital sexual intercourse, for the purpose of producing visual depictions of such conduct?

3.      Do you admit that you produced such visual depictions using materials that had been mailed, shipped, and transported in interstate and foreign commerce, that is, a Canon PC1737 Powershot A3400 IS digital camera being serial number 432061019849 that was manufactured in China, and a Toshiba 8GB HC Micro SD card bearing serial number 1403RP4801P that was manufactured in Taiwan?

Defendant's Initials                     19

### As to Count Two

1.     Do you admit that an actual minor, that is, a real person who was less than 18 years old, was depicted?

2.     On or about October 14, 2016, in the Middle District of Florida, did you employ and use Child 2, to engage in sexually explicit conduct, that is, the lascivious exhibition of the minor's genitals, for the purpose of producing visual depictions of such conduct?

3.     Do you admit that you produced such visual depictions using materials that had been mailed, shipped, and transported in interstate and foreign commerce, that is, a Canon PC1737 Powershot A3400 IS digital camera being serial number 432061019849 that was manufactured in China, and a Toshiba 8GB HC Micro SD card bearing serial number 1403RP4801P that was manufactured in Taiwan?

Defendant's Initials _____                    20

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                      CASE NO. 3:16-cr-154-J-39JBT

ANDREW RYAN LESLIE

### FACTUAL BASIS

In 2015, agents with the U.S. Department of Homeland Security,
Homeland Security Investigations (HSI) began an investigation into certain
websites known to host images and videos depicting child pornography.  This
investigation targeted individuals who were users of such websites where child
pornography was exchanged.  In 2016, defendant, Andrew Ryan Leslie, was
identified as a member of one of these websites.  Further investigation revealed
that Leslie resided in Middleburg, Florida.

On October 18, 2016, HSI agents and other law enforcement
Officers executed a federal search warrant at Leslie's residence in Middleburg,
Florida.  Upon entry into the residence, agents observed as Leslie emerged from
the master bedroom.  Leslie stated in substance that a minor female child,
referred to by Leslie as a "toddler," had been in the bed with Leslie when the
agents arrived.

Defendant's Initials _____

During the execution of the search warrant, HSI agents located, on a nightstand located next to Leslie's bed in the master bedroom, a Canon PC1737 Powershot A3400 IS digital camera bearing serial number 432061019849 that was manufactured in China.  Contained within the camera was an SD adapter and a micro SD card.  This micro SD card was a Toshiba 8GB HC Micro SD card bearing serial number 1403RP4801P that was manufactured in Taiwan.  This camera and this SD card were each shipped and transported in or affecting interstate and foreign commerce.

During a forensic preview, agents discovered that the SD card contained a series of pornographic images depicting Leslie with two different minor female children.  In several images, the same prepubescent minor female child (Child 1, who was approximately 2 years old at that time) who was in the bed with Leslie that morning was depicted.  Other images depicted a different infant female child (Child 2, who was approximately 7 months old at that time).  These images depicted, among other things, Child 1 being vaginally and orally penetrated by Leslie's penis.  There were also images depicting the lascivious exhibition of Child 2's genitalia.  In several images, Leslie is depicted gripping his own penis and contacting the genitalia of Child 1 with it.  All the images on the Toshiba SD card (42 in total) were produced by Leslie on October 14, 2016 using the Canon Powershot digital camera.

Defendant's Initials _____        2

HSI agents also seized numerous items of computer media from Leslie's residence, including several laptop computers, computer hard disk drives, tablets, cell phones, and cameras. Forensic analysis of these items revealed that Leslie had produced, received, distributed, and possessed numerous images and videos depicting child pornography. Moreover, logs of online conversations between Leslie and other individuals were recovered that demonstrate, among other things, that Leslie had discussed engaging in sexual activity with several minor children.

Leslie acknowledges that there exists a sufficient nexus for purposes of forfeiture between the items specified herein and the criminal conduct set forth above.