UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                      CASE NO. 8:21-cr-216-KKM-JSS

MICHAEL LUMPKIN
a.k.a. "Jamari"

## UNITED STATES' SENTENCING MEMORANDUM

The United States files this sentencing memorandum requesting that this Court sentence the defendant, Michael Lumpkin (Lumpkin), to a guidelines sentence of 720 months' (60 years) imprisonment. In support thereof, the United States submits as follows:

### I.        Procedural History

On  July 1, 2021, a grand jury returned a four-count Indictment that charged Lumpkin with one count of enticement or coercion of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), two counts of production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). Doc. 1. On October 3, 2022, Lumpkin pled guilty to Counts Two and Three of the Indictment, which charged him with production of child pornography, pursuant to a plea agreement. Doc. 56, 61, 64. The Court scheduled sentencing for January 9, 2023. Doc. 71.

## II.      Presentence Investigation Report

On December 23, 2022, U.S. Probation issued its Final Presentence Investigation Report (PSR). Doc. 72. It determined Lumpkin's applicable Guidelines range for the underlying offenses as 720 months' imprisonment, based upon a total offense level of 43 and a criminal history category of I.[1]  PSR ¶ 81. The defendant is subject to a 15-year mandatory minimum sentence, up to 30 years as to each count. PSR ¶ 114. The applicable period of supervised release for each count is at least five years to life. PSR ¶ 117-118.  The Defense maintains one Guideline objection. For the reasons that follow, this Court should overrule the defense objection and adopt the remainder of the PSR's facts and guideline calculation.

## III.     Guideline Calculation

The defense asserted that the imposition of a four-level enhancement under USSG § 2G2.1(b)(4)(A) for material that portrays sadistic or masochistic conduct or other depictions of violence is not applicable in this case. As there is no commentary on the term "sadist", a plain language and "Merriam-webster" definition" of "sadistic" is applicable. *United States v. Rogers*, 989 F.3d 1255, 1262 (11th Cir. 2021). The defense argued that there are no depictions of violence or sadism from an objective review of

---

[1] Probation determined the total offense level calculation as 48, however, in accordance with USSG § 5A, comment (n.2), an offense level of more than 43 is to be treated as an offense level of 43. The Guideline imprisonment range is life, however, the statutory maximum sentence of 30 years per count is less than the minimum of the applicable guideline range. Pursuant to USSG § 5G1.2(d), if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively.

the content of the videos with which he pled guilty to producing.  This defendant, however, did engage in conduct that can be considered sadistic and masochistic, as he forced  Y.W. (Victim 1) to engage in degrading and humiliating conduct for his sexual gratification. *United States v. Sanchez*, 30 F.4th 1063, 1075-1076 (11th Cir. 2022); *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999); A "sadist" is "a person who takes pleasure in inflicting pain, punishment, or humiliation on others." *Merriam-Webster* dictionary.

The court in *Sanchez* considered the surrounding conversation between the victim and the defendant to determine if a four-level enhancement for sadistic, masochistic, or depictions of violence, should be counted as part of the guideline calculation. The *Sanchez* court determined that the victim saying performing the sex act would hurt her and Sanchez replying that he liked that, was sufficient for the enhancement to apply. *Sanchez*, 30 F.4th at 1076. In this case, Y.W. (Victim 1) similarly expressed concern and the defendant responded with more explicit and direct instructions of what to create. The offense conduct includes the surrounding conversation of how these videos were created. That conduct speaks to the defendant's desire to degrade and humiliate Victim 1. These videos depicting Victim 1 and K.O. (Victim 3) are not just innocuous videos of two teenagers engaging in sexual acts – they were created for the sexual gratification of the defendant and came into existence under threats by this defendant. Despite Victim 1 asking the defendant to "be done", telling the defendant she was injured as she was "bleeding" from the sexual acts, and expressing worry that her grandmother would be home, the defendant responded with

excessive cruelty: demanding she "chock" and "force it down your throat", in reference to Victim 1 providing oral sex to Victim 3. The defendant sadistically kept demanding humiliating and degrading acts from victim 1, including telling her she would be forced to "suck someone everyday at school" under threat of uploading videos of her to Pornhub. The defendant demanded acts of excessive cruelty by forcing Victim 1 to time the sex acts and to "chock" on Victim 3's penis for an extended time.

For these reasons, the court should adopt the guidelines as outlined by Probation. As also noted by Probation, should the court not include a four-level increase under USSG 2G2.1(b)(4)(A), the defendant still faces a guideline offense level of 43.

## IV.   <u>Argument for a Guideline Sentence</u>

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant.

Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a 60-year guide-line sentence. Lumpkin targeted Victim 1 and coerced her into creating sexually abusive content for his sexual gratification. He poses an extraordinary danger to children in the community and that danger is unlikely to abate over time.

### a. Nature and Circumstances of the Offense

The nature and circumstances of these offenses are abhorrent. The seriousness and duration of the defendant's offense conduct demonstrate the necessity of a guidelines sentence. The defendant did not suffer from a solitary lapse in judgment. His conduct was calculated and premeditated.  Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court.").

In around 2019, the defendant (approximately 24-25 years old) began an online relationship with a then 14-year-old female, Victim 1. The defendant represented himself as "Jamari" and pretended to be similarly aged to the victim. PSR ¶ 20. After enticing  Victim 1 into a romantic relationship, and receiving nude images of her, the defendant expertly and sadistically manipulated Victim 1 into believing various adult men had possession of her nude images and that she must create new sexual content or be exposed on the internet. PSR ¶ 22. The defendant utilized the TextNow application to message Victim 1 from various phone numbers, threatening her and blackmailing her into creating child sexual abuse images. PSR ¶ 22.

In February 2020, the defendant followed through on his threats and posted a video of Victim 1 to Pornhub's website, distributing the child sexual abuse material he coerced Victim 1 to create. The defendant posted this video, which was 2 minutes and 10 seconds long, on February 20, 2020, and it was viewed 142 times. It was posted with a title, which included a nickname and identifying information associated with Victim 1's social media accounts, and how her classmates knew her. PSR ¶ 22-23.

Examples of the coercive, threatening nature of the communications are contained within the PSR ¶ 23 and additional chats are detailed below, as recovered from Victim 1's cellular phone:

**2/8/2020:**
LUMPKIN:        Wheres the dick sucking video
V1:             Where's Jamari have u talked to im and it's coming I promise the person didn't answer his phone and shii I promise u imma have it

LUMPKIN:        He didn't answer me so im here speaking to you
LUMPKIN:        Im not kidding. Where the video

V1:                  Sir I'm getting yo video on no disrespectful shit and what my bae
                     tell you

LUMPKIN:             And I'm not kidding about it either
LUMPKIN:             I'm not bullshitting
LUMPKIN:             When will you have it

V1:                  To be honest I'm starting school and I'll need like some weekends
                     because im going ot be in school an getting me a job
V1:                  Or I'll try to get it done sometime during the week

LUMPKIN:             You have til the end of this week and you are to send nudes
                     anytime I ask starting now and don't tell your boyfriend

V1:                  why can't I tell my boyfriend
V1:                  And I'm in the car and my phone about to go dead I promise you
V1:                  And I'm not going to have the video this week because it's the end
                     already and I think I should have the video the week after next

LUMPKIN:             If you don't have it by Monday I'll be making that periscope
                     account and getting you naked again
LUMPKIN:             And you cant tell because I said so. If you do then you already
                     know

V1:                  I'm trying to tell you I can't have it by Monday because I'm doing
                     my school shopping and I started on my ministration

LUMPKIN:             send titty pictures
LUMPKIN:             more
LUMPKIN:             I said send more
LUMPKIN:             way more. Im not down with playing games
LUMPKIN:             Titties and Face too. Big smile
LUMPKIN:             Why is it taking you so long
LUMPKIN:             Send or I start exposing
LUMPKIN:             I said smile
LUMPKIN:             Now stick ur tongue out

         On February 15, 2020, Victim 1 was forced to produce a video of herself

performing oral sex on a classmate and engaging in vaginal sexual intercourse with

him. PSR ¶ 24. As an example of the threatening, abusive nature of the defendant's communications surrounding the creation of those videos:

**2/15/20:**

| | |
|---|---|
| LUMPKIN: | Just got the video. Next tell that same guy to put his dick inside you record it like you did but don't tell your ex boyfriend why. Then tell him record and send me it. Tell the guy you were sucking to fuck you so hard it makes him jealous. If you tell the ex boyfriend before I get the video then I will upload this video too. Do you understand that |
| V1: | yea |
| LUMPKIN: | you know you want to feel all that dick inside you. Don't you little girl |
| LUMPKIN: | tell him fuck you long as possible and hard and cum inside |
| LUMPKIN: | look into the camera while he fucks you. Tell him go hard and moan loud so your ex gets jealous |
| LUMPKIN: | yes and if he sees you on just ignore him and keep going |
| V1: | igh den I'm done? |
| LUMPKIN: | if you do it the way I said. Then yes so hurry. Before I change my. Mind |
| LUMPKIN: | now suck his dick again and choke on it. Put it down your throat |
| LUMPKIN: | NEXT VIDEO |
| LUMPKIN: | did you hear…you have 1 min to reply |
| V1: | Choke on it? Then I'm done? |
| LUMPKIN: | Yes tell him force it down your throat make you choke for 10 mins. And bend you over for 5 mins. Then I will tell you the password. First part is revolve |
| V1: | I don't wanna get pregnant |
| LUMPKIN: | you wont. He came twice today |
| V1: | and ain't no tellin when she get back so I gotta just give him head and you said I'll be done (V1 referring to her grandmother coming home) |
| V1: | aye we gonna hve to do it nxt weekend or sometime like that bc we finna drop him off |

| | |
|---|---|
| LUMPKIN: | then no deal I upload it all |
| V1: | bro plz bc I'm really in the car |
| V1: | I said I'm finna give him head |
| LUMPKIN: | and bend you over or no deal. |
| V1: | And I'm bleeding bc his finger nail. It was scratching it up. I'll send a pic if I have to |
| LUMPKIN: | tell him face fuck you for 15 mins then. Don't put your hand on it. Choke on the whole ting. Your 15 mins starts in 2 mins. If I don't have the video by then no deal and you can keep it[2] |
| V1: | aye can you let me know when my two mins up so I can start it |
| LUMPKIN: | u have 1 min left. 45 secs. Time up |
| V1: | igh I'm finna get on |
| … | |
| LUMPKIN: | ok uploading now. Im fed up with this |
| LUMPKIN: | Monday I'll make an account and your going to suck someone everyday AT SCHOOL. You understand that |
| LUMPKIN: | and if you don't suck someone everyday I'll upload your sex tape |

The defendant also confirmed in messages to Victim 1 that he posted the child

pornography produced to Pornhub:

**2/20/20:**

| | |
|---|---|
| LUMPKIN: | Uploaded now. Will you continue so that it can be deleted or will you ignore more and let it stay online. |
| LUMPKIN: | [image sent of person giving oral sex to male] |
| LUMPKIN: | I already told you multiple times. Did you think I was joking around with you guys? |
| LUMPKIN: | Answer me or I will put up more. |
| LUMPKIN: | He isn't responding just like you |
| LUMPKIN: | Cute. I do not care. Do you want to continue or do I upload more |
| LUMPKIN: | ok the sex video is next |

---

[2] A video recovered from Lumpkin's cellular phone demonstrated Victim 3 timing Victim 1 preforming oral sex on Victim 3. The timer showed 14 minutes and a few seconds.

The defendant's actions caused the sexual abuse of Victim 1, Victim 3, and ten-year-old Victim 2. These videos were also recovered from the defendant's devices, after being seized by law enforcement. PSR ¶ 28-29. The defendant clearly prayed on these children without regard to the consequences of his actions.

### b. History and characteristics of the Defendant

There is nothing in the history and character of the defendant to warrant a departure or variance in this case. The defendant reported that he was raised by his mother, alongside siblings, and there was no violence in the home or his neighborhood. PSR ¶ 91. The defendant described his relationship with his mother as "good." PSR ¶ 91. The defendant was engaged to A. Burton at the time of these offenses and resided in Florida, with her family. The defendant had been in a relationship with A. Burton since 2013. PSR ¶ 96. The defendant does not suffer from any physical ailments, has no history of mental health issues, or drug or alcohol abuse. PSR ¶ 991-105.

The defendant's conduct is not limited to victimizing those represented in the charged offenses to which the defendant pled. The defendant also forced Victim 1 to perform oral sex on a 10-year-old for his sexual gratification. The defendant then used this video as blackmail. Additionally, while residing with his fiancé's family, the defendant attempted to extort his fiancé's sister (T.B.) in a similar fashion. Evidence obtained from the defendant's fiancé's cell phone, indicated threatening messages were sent to T.B., alleging the defendant had compromising sexual videos of T.B.  In May

2020, the defendant posted videos to Pornhub, and included T.B.'s name within the video titles. The defendant, therefore, utilized the same tactics used with Victim 1, to threaten and coerce T.B. to create new sexual videos. Investigation revealed these videos were not actually T.B., just an attempt to scare T.B. into creating images and videos for the defendant.

A search of the defendant's cellular phone also revealed a history of preying on minors, sextortion, and relationships with underage girls. For instance, the defendant had an online relationship with A.B for approximately 3 years, while she was a minor. A.B. was approximately 13 years old when the defendant began an online relationship with her. Law enforcement also recovered chat conversations and pictures exchanged with minors, identified as A.B., M.W., and A.P. Within a chat conversation with M.B., the defendant threatened "more videos going up then." This is in the same time frame that the defendant uploaded a video to Pornhub with a known nickname for M.W. This conduct is again similar in nature to that suffered by Victim 1 and demonstrates the defendant's history of predatory conduct. The defendant's behavior continued for years and with multiple victims.

Furthermore, Lumpkin also possessed images and videos of child sexual abuse on his electronic devices. He admitted to law enforcement that "he got wrapped up in it" and was  trading these images and videos on the internet. PSR ¶ 102. Possession of child pornography is not a victimless crime. Each child depicted in those videos and images are a victim – a victim who has to live with the sexual abuse they endured that was documented and put on the internet to live in perpetuity. The Government would

rely on the victim impact statements provided in the PSR to demonstrate the severity of this conduct.

### c. Seriousness of the crime and impact on the victims

It is axiomatic that hands-on sexual abuse inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eighth Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

> [...] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id.* at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). And this is to say nothing of the serious and sometimes long-lasting physical injuries that hands-on sex abuse can inflict on a child victim, such as internal lacerations, scarring, ovary damage, and encopresis. *See U.S. v. Irey,* 612 F.3d 1160, 1206 (11th Cir. 2010) (collecting cases).

The defendant's graphic child pornography collection revictimized countless other children. He consumed media depicting child sex abuse with no regard to the

broken lives depicted in the images and videos that he so willingly shared and helped create. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children .... [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation..." *New York v. Ferber*, 458 U.S. 747, 758-759 nn. 9-10 (1982) (citation omitted). A guidelines sentence is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

The Government would rely upon the victim impact statements submitted with the PSR. Additionally, the impact of the defendant's conduct on Victim 1's mental health must be considered. As part of the investigation, law enforcement conducted forensic searches on Victim 1's phone and located a conversation from January 18, 2020, in the midst of the defendant's blackmail of her, where Victim 1 told her friend: "I wanna kill my self." Victim 1 expressed she felt responsible for the defendant's blackmail of her: "ye and it is my fault", stating "he won." She also consulted her friend with how to deal with her blackmailer, stating, "aye u think I should act like I'm back wit Jamari just to get my situation done?".  A screenshot of a conversation recovered from within the defendant's cellphone is also demonstrative of the impact the defendant's conduct had on Victim 1's mental health. The screenshot had a creation date of February 11, 2020 and is as follows:

> o Me: "so last year I had to suck my lil bros thying bc that man and Jamari was going to expose me. Does dat make me a child maltster bc I was forced to do it and he'll nah I'm not a pedophile I was just

> scared."
> - o D.I.E.: "call me"
> - o Me: "I can't I'm at the hair salon I'm so scared."
> - o D.I.E.: "aww hold up give me like 10 minutes"
> - o Me: "Then the girl gonna save my pic of me wen I was sucking my lil bro I really didn't wanna…

The defendant's history and character, the impact of his crimes on his victims, necessitate the need for a  harsh sentence.

### d. Need to promote respect for the law, afford adequate deterrence, and protect the public from further crimes of the defendant

As demonstrated from the defendant's criminal history and offense conduct, the need for the sentence imposed to promote respect for the law and to provide adequate deterrence to criminal conduct is significant. The defendant's pattern of abuse, coercion, and exploitation against victims is evidence of his reoffending and recidivism. He has demonstrated no signs of changing his menacing behavior and continues to pose a serious danger to society. A lengthy term of incarceration is the only mechanism available to the court to protect the public from further crimes of the defendant. A lengthy sentence will deter comparable activities and convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit.

### 1. Promoting respect for the law

This Court's sentence must reflect the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation

of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Indeed, child sexual abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (quoting C. Bagley & K. King, Child Sexual Abuse: The Search for Healing 2 (1990)). The defendant's actions violated federal law, but they also transgressed accepted social norms that undergird our laws. His conduct was unnatural, morally repugnant, and incompatible with a well-ordered society. This Court's sentence must express an appropriate level of social condemnation of his crime.

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *U.S. v. Irey,* 612 F.3d at 1206: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this

Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). In the same vein, Congress has expounded that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct," as well as the "harm done or threatened by the offense."  S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *U.S. v. Sarras*, 575 F.3d 119, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a guidelines sentence.

## 2.  Deterrence and protecting the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.  The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). As this Circuit recognized in *Irey*, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214

(citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

This Court should also impose a guidelines sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey,* 612 F.3d at 1208 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). The Eleventh Circuit Court of Appeals has affirmed lengthy sentences for conduct bearing resemblance to Lumpkin's. In *United States v. Huskey*, the Eleventh Circuit affirmed a 70-year sentence for a defendant who, beginning when his daughter was six-years old and continuing for three years, engaged in anal, oral, and vaginal sex with her, also penetrating her with objects. 349 F. App'x 495, 496 (11th Cir. 2009). Huskey (who scored as a criminal history category I) recorded the sexual abuse and distributed the pornography he created on the internet. *See id. Huskey* is merely one example of the Eleventh Circuit rejecting reasonableness challenges to life and natural life sentences for such conduct. *See, e.g.*, *United States v. Foster*, 209 Fed. Appx. 942 (11th Cir. 2006) (affirming life sentence for defendant with criminal history category I, who during a 4-year period engaged in oral and vaginal sex with a single victim, his daughter, who was less than 12-years old when the abuse began). In *United States v. Sarras*, the Eleventh Circuit affirmed as substantively

reasonable a 100-year sentence where the defendant had several sexual encounters with a single 13-year-old girl for roughly one year and took explicit photographs of her. *See* 575 F.3d 1191, 1220 (11th Cir. 2009). In *United States v. Johnson*, the Eleventh Circuit upheld as reasonable a 140–year sentence where the defendant, with a criminal history category of I, abused and photographed three boys—Victim 1, from 8–15 years old, Victim 2, from 14–16 years old, and Victim 3, from 13–14 years old. *See* 451 F.3d 1239, 1244 (11th Cir. 2006); *see also United States v. Kapordelis*, 569 F.3d 1291, 1318–19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance, where defendant engaged in a pattern over many years of molesting young teenaged boys and taking photographs of them).

In most cases, the Eleventh Circuit has "treated sex offenses as serious crimes, upholding severe sentences…" *United States v. Pugh*, 515 F.3d 1179, 1202 (11th Cir. 2008). The Eleventh Circuit is not alone in that regard. Nor is this Circuit alone in upholding stern sentences for conduct comparable to Lumpkin's crimes. For example, in *United States v. Betcher*, the Eighth Circuit Court of Appeals upheld as reasonable a 750-year sentence for a first-time offender who had taken pornographic pictures of five girls, their ages ranging from eight to 11, including two of his granddaughters. 534 F.3d 820, 827-28 (8th Cir. 2008). Likewise, in *United States v. Vowell*, the Sixth Circuit Court of Appeals upheld a 65-year sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter, while being videotaped by his girlfriend. 516 F.3d 503, 511-13 (6th Cir. 2008). Additional extra-circuit illustrations abound. *See, e.g.*, *United States v. Brown*, 843 F.3d 74, 75 (2d Cir. 2016) (upholding 60-

year sentence for defendant who produced child pornography of at least five children, including an infant); *United States v. Horton*, 770 F.3d 582, 583 (7th Cir. 2014) (affirming 90-year sentence for defendant who, over a one-month period, created 37 videos of himself engaged in sexual conduct with three male students).

## V.     Request for Restitution

The provisions of the Mandatory Victim Restitution Act of 1996 apply to this offense. Further, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 is applicable. The Court shall order restitution in an amount that reflect the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. 18 U.S.C. § 2259(b)(2). The images and videos of child pornography retrieved by law enforcement in this case were sent to the National Center for Missing and Exploited Children (NCMEC). NCMEC identified 32 pornographic images of known child victims from 27 known child pornography series. The images and videos of the victims identified by NCMEC originated from a variety of domestic and foreign locations outside the state of Florida. Of those identified victims, "Maria" of the "Best Necklace" series requested $5,000 in restitution; "Pia" of the "Sweet White Sugar" series requested $5,000 in restitution; "Lily" of the "Vicky Series" requested $10,000.

VI.     **Conclusion**

The defendant's criminal conduct in the instant case demonstrate he has engaged in the exploitation of children for his own sexual gratification. His sentence should fairly account for his predatory and abusive nature, the scope of his criminal endeavor, acknowledge the harm he has caused the victims, and acknowledge the ramifications of his actions. For the aforementioned reasons, the United States respectfully requests the Court issue a 60-year sentence.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:     */s/ Ilyssa Spergel*
Ilyssa Spergel
Assistant United States Attorney
Florida Bar No. 102856
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Ilyssa.Spergel@usdoj.gov

**U.S. v. Michael Lumpkin**                    **Case No. 8:21-cr-216-KKM-JSS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 30, 2022, I filed the foregoing document

with the Clerk of the Court and sent a copy to counsel of record.


_/s/ Ilyssa M. Spergel_
Ilyssa M. Spergel
Assistant United States Attorney
Florida Bar No. 0102856
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:   (813) 274-6300
Facsimile:    (813) 274-6178
E-mail: ilyssa.spergel@usdoj.gov